# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| RANNA MUOR, | Civil No. 10-3786 (JRT/JJK) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| U.S. BANK NATIONAL ASSOCIATION d/b/a U.S. BANK, | |
| Defendant. | |

Stephen M. Thompson and Tammy P. Friederichs, **FRIEDERICHS & THOMPSON, PA**, 1120 East 80th Street, Suite 106, Bloomington, MN 55420, for plaintiff.

Amy Walsh Kern and Kristin Berger Parker, **LEONARD STREET AND DEINARD, PA**, 150 South 5th Street, Suite 2300, Minneapolis, MN 55402, for defendant.

Plaintiff, Ranna Muor, worked for defendant, U.S. Bank National Association ("U.S. Bank"), for more than twenty-five years before resigning in March 2010. Muor alleges that U.S. Bank engaged in national origin discrimination and retaliation in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.*, and the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363A *et seq.*[1]  The Court will grant U.S. Bank's motion for summary judgment because Muor has failed to make a prima facie case of national origin discrimination or reprisal/retaliation.

---

[1] Although the Complaint also references a harassment claim, at oral argument Muor's attorney represented that she was not pursuing a separate claim for harassment under either Title VII or the MHRA.

## BACKGROUND

Muor was born in Cambodia, and she moved to Minnesota in 1980 when she was seventeen.  (Tammy P. Friederichs Aff., Ex. A, Ranna Muor Dep. at 16:13-23, Apr. 14, 2010, Docket No. 22.)  Muor began working for U.S. Bank in 1983 as a part-time filing clerk.  (*Id.* at 9:20-10:3.)  She worked in a variety of positions until 1999 when she became an International Banking Specialist.  (*Id.* at 10:8-16.)  As an International Banking Specialist, Muor set up letters of credit for new customers, prepared letters for her supervisor to review, sorted mail, and performed other duties.  (*Id.* at 12:2-16:14.)

Bruce Staples supervised Muor from the time she started working as an International Banking Specialist until 2005.  (Tammy P. Friederichs Aff., Ex. F, Bruce Staples Dep. at 69:6-10, Sept. 20, 2011.)  During this period, Staples also supervised Kathleen Czantskowski who also worked as an International Banking Specialist.  (*See id.* at 69:9-16.)  Barb Engen supervised Staples.  (*Id.* at 66:14-15.)

In 2005, Staples went on disability leave and never returned,[2] and Engen assumed direct supervision of both Muor and Czantskowski.  (*See* Muor Dep. at 35:10-15.)  In 2006, Czantskowski began supervising Muor.  (Tammy P. Friederichs Aff., Ex. E, Kathleen Czantskowski Dep. at 12:12-14, Aug. 3, 2011, Docket No. 22.)  Czantskowski supervised Muor until Muor's resignation in 2010.  (*Id.* at 12:15-16.)

---

[2] Staples also claims he was the subject of retaliation, including constructive discharge, by Engen and other U.S. Bank managers after he reported discrimination and harassment.  (*See* Bruce Staples Aff. ¶¶ 12, 14, Aug. 26, 2011, Docket No. 21.)

# I.   MUOR'S CLAIMS OF DISCRIMINATORY REMARKS BY CZANTSKOWSKI

Muor asserts that Czantskowski made derogatory remarks about Muor while Staples was still their supervisor.  Staples testified that Czantskowski told him that Muor "couldn't speak English" and "should go back to Cambodia." (Staples Dep. at 132:5-13.) Staples also testified that he heard Czantskowski make comments about another Asian employee's "slanty eyes" and say she "did not like Asian people." (*Id.* at 131:15-24.) Staples asserts that he attempted to report the comments, both in Czantskowski's performance reviews and in more formal reports to Engen. (*Id.* at 134:3-23.)  He asserts that Engen removed the information from his performance reviews and took no action on his other reports. (*Id.*)  Staples did not report the incidents to anyone other than Engen. (*Id.* at 135:18-23.)  Staples testified that he kept records of the discrimination but that the records were removed from his desk and destroyed while he was on short-term disability leave. (*Id.* at 135:24-137:3.)

Muor asserts that Czantskowski treated her "as a lesser person" because she is Cambodian, often ignoring her when she spoke. (Muor Dep. at 97:7-18.)  Muor asserted that she felt like she was "treated differently" (*id.* at 98:18-19) and that Czantskowski had a "mean voice" (*id.* at 99:1-3).  Yet, Muor could not remember Czantskowski ever saying anything negative directly to her about being Cambodian or Asian; she simply felt that Czantskowski treated her poorly because she was Cambodian. (*See id.* at 100:23-101:5.)

## II.    MUOR'S 2000-2005 PERFORMANCE EVALUATIONS

Staples completed Muor's performance reviews from 2000 to March 2004. Staples described Muor as "a solid performer, not highly efficient and not exceptional." (Staples Dep. at 96:10-11.)  In the performance reviews, Staples gave Muor a score of "3" or "solid performance" overall.  (Amy Walsh Kern Aff., Ex. B, 2000-2001 Evaluation; Ex. C, 2001-2002 Evaluation; Ex. E, 2002-2003 Evaluation; Ex. F, 2003-2004 Evaluation.)  However, Staples consistently gave Muor "marginally acceptable" ratings in several areas, including "Work is completed in a neat, efficient and accurate manner" (2001-2002 Evaluation; 2002-2003 Evaluation); "Proactively adjust to work within new structures, processes, requirements or cultures (2001-2002 Evaluation; 2000-2001 Evaluation; 2003-2004 Evaluation); and "Takes initiative in solving problems" (2001-2002 Evaluation; 2002-2003 Evaluation).  The comments to the evaluations repeatedly reflect Muor's "great attitude."  (*See, e.g.*, 2000-2001 Evaluation.)  But the comments also note areas that needed improvement and continuing weaknesses:  The comments state that Muor "needs to continue to pay attention to detail" (2000-2001 Evaluation); "still needs consistent supervision"  (2001-2002 Evaluation); "needs to work on her accuracy when turning in her work daily"; "still needs alot [sic] of assistance when the letter of credit transactions are more complex" (2002-2003 Evaluation); "relies on peers to solve issues when she is unsure of herself"; "needs to broaden her knowledge in the more complex payments as welll [sic] as letters of credit" (2003-2004 Evaluation), and that Muor's "work is inconsistent on a daily basis . . . [she] need[s] to spot check [her] work before turning in for signing" (2001-2002 Evaluation).

In 2005, Engen completed Muor's performance review, and Muor again received an overall performance rating of "solid performance." (Kern Aff., Ex. G, 2005 Evaluation.) The evaluation was very positive: Muor received "highly effective" ratings in several areas and no "needs improvement" ratings.

## III. MUOR'S 2006-2008 PERFORMANCE EVALUATION AND DISCRIMINATION CLAIMS

From 2006 to 2008, Czantskowski completed Muor's performance reviews. In her 2006 review, Muor received an overall performance rating of "solid performance." (Kern Aff., Ex. I, 2006 Evaluation.) She received no "highly effective" or "needs improvement" marks. The comments on the evaluation noted that "her work has errors" and sometimes "work has to be redone and/or corrections made." (*Id.*)

In her 2007 review, Muor received an overall performance rating of "solid performance." (Kern Aff., Ex. H, 2007 Evaluation.). However, Czantskowski gave Muor "needs improvement" scores in several areas. The review states that Muor "demonstrate[s] a skill level below that of an International Banking Specialist 3." Czantskowski noted Muor's work was "inconsistent" and that she "needs to slow down and spot check her work before turning it in to be signed." (*Id.*)

Czantskowski presented Muor with her 2007 evaluation in February 2008 in a meeting in which Engen was also present. (*See id.*; Muor Dep. at 112:9-12.) In the "Employee Comments" section of this review, Muor wrote, "I strongly disagree with this review. It is inconsistent and contradective [sic]." (2007 Evaluation.) Muor also asserts that, after seeing the review, she said Czantskowski was discriminating against her and

the performance review was discriminatory. (Muor Dep. at 110:23-111:16.)[3]  Because of

the low scores awarded to Muor in several areas, U.S. Bank asserts that Czantskowski

was concerned about giving Muor the 2007 review and contacted Sharon Bach, a human

resources employee, before giving Muor the evaluation.  (Kern Aff., Ex. BB, Kathleen

Czantskowski Dep. at 144:12-146:11, Docket No. 16.)   Engen[4] contacted Bach again

after Muor received her review, and notified Bach that Muor had asserted Czantskowski

was discriminating against her.  (Pl.'s Mem. Opp. Summ. J. at 9, Docket No. 20; Bach

Dep. at 30: 20-23; Muor Dep. at 111:12-16.)  Following Bach's advice, Engen met with

Muor again to ask specific questions regarding her allegations of discrimination.  (Bach

Dep. at 31:11-19; Friederichs Aff., Ex. 5, E-mail from Engen to Bach, Feb. 20, 2008,

Docket No. 22.)   Engen provided Muor with Bach's contact information (E-mail from

Engen to Bach), and Muor called Bach (*see* Bach Dep. at 32:14-33:12).   Bach never

received a response or rebuttal to the performance report written by Muor.  (*Id.* at 33:8-

14.)  Neither Bach nor Muor followed up further.  (*See id.*; Muor Dep. at 118:22-119:9.)

In early 2008, Czantskowski offered to provide Muor with further training.  (Kern

Aff., Ex. L, E-mail from Czantskowski to Muor, Docket No. 16.)  The only training for

International Banking Specialists is on-the-job.  (Czantskowski Decl. ¶ 14, Docket

No. 26.)   Muor and Czantskowski only met for training time once, however.  (*See*

Czantskowski Dep. at 73:25-76:10.)   Muor admits she was offered more training by

---

[3] Czantskowski asserts that Muor did not complain directly to her that the review was
discriminatory.  (Kern Aff., Ex. BB, Czantskowski Dep. at 146:13-18.)

[4] It is not clear if Czantskowski and Engen or just Engen contacted Bach.

Czantskowski in some areas, but she asserted that it was not in the areas she needed. (Muor Dep. at 77:24-75:9.)  Czantskowski asserts that Muor was "adamant" that she knew her job and that if she had questions she would seek out Czantskowski. (Czantskowski Dep. at 76:7-25.)

Engen wrote Muor's 2008 performance review, although Czantskowski was still Muor's manager.  (Kern Aff., Ex. N, 2008 Evaluation.)  Muor received an overall performance rating of "needs improvement."  (*Id.*)  The comments noted,

> Ranna is not meeting the minimum requirements of her job. . . . She does not consistently apply the rules and regulations that govern the letters of credit. . . . Ranna demonstrates a skill and experience level below that of her peers performing the same job.  Accuracy continues to be a problem for Ranna.  This has been mentioned in past reviews and has not improved.

(*Id.*)

When she received the 2008 review, in late February 2009, Muor also received a Written Warning of Unsatisfactory Performance.  (Kern Aff., Ex. O, Written Warning; Czantskowski Dep. at 75:25-76:1.)  At U.S. Bank, a written warning is placed in an employee's personnel file, and it makes the employee ineligible for salary increases and bonuses.  (Bach Dep. at 19: 12-19.)  After receiving a written warning, an employee is not allowed to apply for other positions within the company until their performance improves.  (*Id.*)

After receiving the review and the warning, Muor became ill and went home. (Muor Dep. at 163:12-22.)  On March 4, 2009, Muor dropped off letters at the U.S. Bank office after hours, accusing Czantskowski of discrimination and challenging her written

warning.[5]  (Kern Aff., Ex. P & Ex. Q.)  Engen notified Bach of the discrimination complaints.  (Engen Dep. at 39:4-23.)  After using a few days of vacation, Muor went on short-term disability leave.  (*See* Muor Dep. at 163:17-22.)

## IV.   MUOR'S LEAVE OF ABSENCE AND RESIGNATION

Muor's stress-related leave of absence began on March 5, 2009.  (*Id.* 163:12-164:20; Def.'s Mem. Supp. Summ. J. at 16, Docket No. 14.)  Bach asserts that she attempted to contact Muor on multiple occasions but that Muor was non-responsive, saying she did not want to "talk about it right now."  (Bach Dep. at 23:22-24:16.)

In June 2009, Muor returned to work for two weeks on a part-time basis.  (Muor Dep. at 165:16-24.)  Bach contacted Muor during this period to discuss her discrimination claims.  (*Id.* at 169:9-21.)  Muor again asserted that she did not want to discuss the claims then, saying she felt ill and she did not want to go through it again.  (*Id.* at 169:17-170:13.)  After the two week period, Muor returned to disability leave.  (*Id.* at 177:8-15.)

On December 21, 2009, Bach sent Muor a letter stating she had received a letter from Muor's doctor indicating Muor would be able to return on a part-time basis on January 4.  (*Id.* at 179:13-20.)  Muor asserts that her doctor did not send a letter at this time saying that she was ready to return to work.  (*Id.* at 179:13-25.)  Neither letter was submitted as an exhibit by either party.

---

[5] Staples helped Muor prepare these letters.  (Muor Dep. at 26:8-27:7.)

On December 28, 2009, U.S. Bank hired Jody Brown as an International Banking Specialist.  (Friederichs Aff., Ex. D, Jody Brown Dep. at 5:7-6:9.)  Muor claims that Brown replaced her; U.S. Bank asserts that Muor has not been replaced by a new hire to date.[6]

On January 5, 2010, Bach sent Muor a letter stating that if Muor did not return to work by January 18, 2010, U.S. Bank would fill her position.  (Muor Dep. at 180:14-19; Kern Aff., Ex. R, Jan. 5 Letter to Muor, Docket No. 16.)  Muor did not return to work in January.  (Muor Dep. at 182:8-16.)

On February 23, 2010, Bach sent an e-mail to Muor saying she had received a fax from Muor's doctor indicating that Muor was cleared to return to work part-time on March 2, 2010.  (*Id.* at 183:12-21; Kern Aff., Ex. S, Docket No. 16.)  The e-mail also indicated that Muor's position was no longer open because she had not returned to work by January 18.  (Kern Aff., Ex. S.)

At the time, Bach offered Muor a part-time teller position which Muor rejected. (Muor Dep. at 184:9-15.)  Muor applied for a different position (in the mortgage closing department) at U.S. Bank and informed Bach of her application.  (*Id.* at 185:2-18; Kern Aff., Ex. T, Docket No. 16.)  On March 17, 2010, U.S. Bank offered Muor a position as an International Banking Specialist, working under a different direct supervisor.  (Muor Dep. at 188:18-189:8; Kern Aff., Ex. U, Docket No. 16.)  The position had the same

---

[6] U.S. Bank asserts that Brown was hired to replace another (Caucasian) employee whose employment had been terminated during Muor's absence.  (Def.'s Reply Mem. at 8 (citing Czantstkowski Decl. ¶ 19, Docket No. 26).)

salary as Muor's previous position.[7]   (Def.'s Mem. Supp. Summ. J. at 18 (citing Muor

Dep.).)   Muor rejected this position because she had previously worked with her

proposed new supervisor, Mary Hudoba, and did not like her.   (Muor Dep. at 189:5-10,

194:20-7.)   Muor asserts that Hudoba had harassed her because she was Cambodian.[8]

(*Id.* at 191:24-192:1.)   Muor had never reported this harassment.   (*Id.* at 192:2-3.)   Muor

said in her deposition that she did not inform U.S. Bank why she had rejected this offer

(*id.* at 196:4-7), but in her briefing she asserts that she did tell Bach she "could not take

the position due to harassment and discrimination."   (Pl.'s Mem. Opp. Summ. J. at 17

(citing Bach Dep. at 45-46.[9])).   Muor resigned her position with U.S. Bank on March 19,

2010.   (Muor Dep. at 198:21-23.)

## DISCUSSION

## I.     STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material

fact and the moving party can demonstrate that it is entitled to judgment as a matter of

law.   Fed. R. Civ. P. 56(a).   A fact is material if it might affect the outcome of the suit,

and a dispute is genuine if the evidence is such that it could lead a reasonable jury to

return a verdict for either party.   *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248

---

[7] It is unclear if the written warning and its resulting salary freeze would have still been in effect if Muor had taken this position.   (*See* Bach Dep. at 19:12-19.)

[8] It is unclear from Muor's testimony what conduct by Hudoba she believed was discriminatory.   (*See* Muor Dep. at 191:6-23.)

[9] Bach recalled that Muor had not accepted the position because "she said that she did not want to be harassed and discriminated against."   (Bach Dep. at 46:7-8.)   Nothing in the record suggests that Muor communicated her concerns about Hudoba to anyone at U.S. Bank.

(1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

## II.    MUOR'S RACE/NATIONAL ORIGIN DISCRIMINATION CLAIM

Muor's national origin discrimination claim under both the MHRA and Title VII must be analyzed under the three-step framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).[10]  *See Hoover v. Norwest Private Mortg. Banking*, 632 N.W.2d 534, 542 (Minn. 2001).  Muor must make out a *prima facie* case of discrimination.  U.S. Bank can then rebut the presumption of discrimination by showing a legitimate – non-discriminatory – reason for its employment action.  If U.S. Bank presents a legitimate reason for the employment action, Muor can prove discrimination by showing that U.S. Bank's explanation is pretextual.  *McDonnell Douglas*, 411 U.S. at 804.

---

[10] A plaintiff could also make a claim of discrimination by presenting direct evidence; however, Muor has not asserted that she has direct evidence of discrimination and instead uses the *McDonnell Douglas* framework.  The only direct evidence of discrimination presented by Muor is Czantskowski's statements.  These statements were not only remote in time to the adverse employment actions, *Simmons v. Oce-USA*, 174 F.3d 913, 915-16 (8th Cir. 1999), they were made when Czantskowski was not a decision maker, *Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011).  Furthermore, Muor has also provided no evidence to link the statements to the decision making process.  *Stacks v. Sw. Bell Yellow Pages, Inc.*, 996 F.2d 200, 202 n.1 (8th Cir. 1993) ([T]he plaintiff must present evidence showing a specific link between discriminatory animus and the challenged decision.")

A.      **Muor's *prima facie* case**

To demonstrate a *prima facie* case of race/national origin discrimination, Muor

must show that (1) she is a member of a protected class; (2) she was qualified for her job

(that is, she was meeting her employer's legitimate expectations); and (3) she suffered an

adverse employment action; (4) under circumstances that give rise to an inference of

unlawful discrimination. *Anderson v. Durham D&M, LLC*, 606 F.3d 513, 520 (8th Cir.

2010). The parties do not contest whether Muor was a member of a protected class or

whether she was qualified for her job.[11] The Court concludes, however, that Muor did

not suffer an adverse employment action and that she has asserted no facts that permit an

inference of unlawful discrimination.


1.      **Adverse Employment Actions**

To establish an "adverse employment action an employee must show a tangible

change in duties or working conditions that constituted a material employment

disadvantage." *Burchett v. Target Corp.*, 340 F.3d 510, 518 (8th Cir. 2003) (internal

quotation marks omitted). Muor asserts that U.S. Bank subjected her to the following

adverse employment actions: holding her to a higher performance standard than her job

required and preparing a performance review based on that higher standard; issuing a

---

[11] U.S. Bank does not directly contest whether Muor was qualified for her job. (*But see* Def.'s Mem. Supp. Summ. J. at 18-19 (arguing that Muor agreed that many criticisms of her performance were reasonable and that her employer's expectations reasonable).) Moreover, since U.S. Bank offered Muor another position as an International Banking Specialist in March 2010, the Court will assume U.S. Bank admits that Muor was qualified for her position.

written warning; providing inconsistent instructions; and failing to provide training.[12] (Pl.'s Mem. Opp. Summ. J. at 21-22.)

First, critical performance reviews and written warnings are not – without more – adverse actions.  In *Burchett*, the Eighth Circuit held a negative performance review is "actionable only if the employer subsequently uses that review to alter the terms or conditions of employment to the detriment of the employee."  340 F.3d at 518-19.  *See also Elnashar v. Speedway SuperAmerica, LLC*, 484 F.3d 1046, 1058 (8th Cir. 2007).[13] Muor has not identified any detriment that she suffered because of the negative review or written warning.[14]   Indeed, she was offered two alternative positions before her resignation in March 2010, after she had received both the negative reviews and the warning letter.

Second, "[a]n employer's denial of an employee's request for training is not, without more, an adverse employment action."  *Box v. Principi*, 442 F.3d 692, 697 (8th Cir. 2006).   The record indicates that Muor was offered on-the-job training from

---

[12] Muor would also include triggering an emotional collapse that forced Muor out of the work environment; but this is a result, not an adverse action by U.S. Bank.

[13] Muor asserts that in *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1106 (8th Cir. 2000) the Eighth Circuit held a written warning was an adverse employment action.  "In *Bassett* however, the adverse employment prong was not at issue, as plaintiff was terminated."  *Higgins v. Gonzales*, 481 F.3d 578, 588 n.6 (8th Cir. 2007).  Additionally, in *Bassett*, the written warning received by the plaintiff was part of a series of adverse employment actions including suspensions, investigations, and ultimately termination.  211 F.3d at 1105-06.

[14] Although Muor notes that U.S. Bank's policy is that a written warning makes the employee ineligible for salary increases and bonuses and prevents an employee from applying for other positions within the company until their performance improves, (Bach Dep. at 19: 12-19), Muor does not assert that she was denied a salary increase or a bonus or was prevented from applying for other positions because of the written warning.

Czantskowski but that she felt it was not needed and that she rejected the offer of additional meetings with Czantskowski. Furthermore, nothing in the record indicates that Muor's race had anything to do with the training she did or did not receive.

"While the action[s] complained of may have had a tangential effect on [Muor's] employment, [they] did not rise to the level of an ultimate employment decision intended to be actionable under Title VII." *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997). Quite simply, there is no evidence in the record that any action Muor complained of ever resulted in a material employment disadvantage. *See LaCroix v. Sears, Roebuck, and Co.*, 240 F.3d 688, 692 (8th Cir. 2001).[15] There is no evidence that an "ultimate employment decision" was based on any of the acts complained of by Muor. *See Ledergerber*, 122 F.3d at 1144. Accordingly, the Court finds Muor has failed to establish prong three of her prima facie case, that she suffered an adverse employment action.

### 2.    Inference of Unlawful Discrimination

The Court also concludes that Muor has failed to provide evidence that would establish an inference of unlawful discrimination. First, the performance reviews that Muor asserts were discriminatory were consistent with her earlier reviews. Although Muor's overall performance score declined for the first time in her 2008 review, the criticisms were consistent with earlier reviews written by a different supervisor. Nothing in the reviews suggests that they were motivated by a "prohibited reason." *Anderson*, 606 F.3d at 521.

---

[15] As in *LaCroix*, shortly after several of the events complained of, Muor took a medical leave of absence from which she did not return.

Second, Muor provides little or no evidence of discriminatory intent.  Other than her own feeling that Czantskowski's treatment of Muor was caused by her national origin, the only evidence Muor offers of bias is Staples' testimony.  "Under the *McDonnell Douglas* analysis, stray remarks, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process are insufficient to establish a prima facie case." *Smith v. DataCard Corp.*, 9 F. Supp. 2d 1067, 1079 (D. Minn 1998) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 288, 276-78 (1989)); *see also Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 427-28 (8th Cir. 1999). Czantskowski's remarks were both remote in time and she was a non-decisionmaker at the time she allegedly made them.  *See DeRoche v. All Am. Bottling Corp.*, 57 F. Supp. 2d 791, 797 (D. Minn. 1999).  Muor also provides no evidence connecting Czantskowski's remarks to any decisional process involving Muor.  *Walton*, 167 F.3d at 427-28.

Muor asserts that bias was demonstrated by Czantskowski filling Muor's position with non-Asian employees.  Yet Muor had indicated no intent to return to work when Czantskowski filled an International Banking Specialist position by hiring Brown. Czantskowski's hiring of non-Asian employees is irrelevant.

Muor further argues that Czantskowski treated her differently than other non-Asian employees, particularly when she made mistakes, thereby demonstrating bias. "Under this standard, the plaintiff "must show that she and other employees were involved in or accused of the same or similar conduct and [were] disciplined in different ways." *See Lee v. Kmart Corp.*, -- F. Supp. 2d --, 2011 WL 6740335, at *4 (D. Minn.

Dec. 21, 2011).  Muor provides no evidence of how similarly-situated white employees were disciplined.  The only evidence she provides are her own allegations about workplace interactions.[16]  Such bald allegations are insufficient.  *See Shanklin v. Fitzgerald*, 397 F.3d 596, 603 (8th Cir. 2005).  The Court concludes that Muor has failed to establish prong four of her prima facie case: that the events she complains of occurred under circumstances that gave rise to an inference of unlawful discrimination.

### B.   U.S. Bank's Nondiscriminatory Reason and Lack of Pretext

Even if Muor had met her burden of demonstrating a *prima facie* case of discrimination, the Court concludes that U.S. Bank demonstrated a legitimate reason for issuing negative performance reviews and a written warning – Muor's failure to meet her supervisor's expectations.  Further, the Court finds that Muor fails to demonstrate that U.S. Bank's reasons were pretextual.

A plaintiff may demonstrate pretext by showing "the employer's proffered reason has no basis in fact."  *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1052 (8th Cir. 2006).  Alternatively, a "plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision."  *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010).  Muor asserts that Czantskowski's bases for the written warning were not "worthy of belief," U.S. Bank

---

[16] Muor asserts that Czantskowski would tell other employees what they were doing wrong but that she did not discipline them (Pl.'s Mem. Opp. Summ. J. at 24-25); however, Muor provides no evidence that these employees made the same types of errors at the same frequency or had the same level of experience.

failed to follow its own policies, and Czantskowski treated non-Asian employees differently.

Muor has not demonstrated that Czantskowski's criticisms had no basis in fact. The criticisms in the written warning and the performance review are similar to – although more severe than – those received in previous performance reviews from a different supervisor. Muor has also failed to show that U.S. Bank did not follow its own policies. Muor asserts that Engen's involvement in her performance review demonstrates a "deviation" from the normal evaluation process. Engen admitted she did not typically get involved in preparing performance reviews (*see* Engen Dep. at 12:6-24); however, she noted that part of her job as a supervisor is to be involved in the process when needed (*see id.*). Finally, as discussed *supra*, Muor has not demonstrated that similarly-situated employees were treated in a disparate manner.

The Court concludes that Muor has failed to meet her burden with respect to her discrimination claim either by demonstrating a *prima facie* case or by demonstrating her employer's reasons were pretextual. Consequently, the Court will grant U.S. Bank's summary judgment motion for this claim.

## III.    MUOR'S REPRISAL CLAIM

As with Muor's national origin discrimination claim, her reprisal claim under both the MHRA and Title VII must be analyzed under the three-step framework set forth in

*McDonnell Douglas Corp. v. Green.*  411 U.S. at 802.[17]  *Hoover*, 632 N.W.2d at 542.

Muor must make out a *prima facie* case of reprisal.  U.S. Bank can then rebut the

presumption of reprisal by showing a legitimate – nonretaliatory – reason for its

employment action.  If U.S. Bank presents a legitimate reason for the employment action,

Muor can prove reprisal by showing that U.S. Bank's explanation is pretextual.

*McDonnell Douglas*, 411 U.S. at 804.

## C.      Muor's *Prima Facie* Case

To demonstrate a *prima facie* case of reprisal, Muor must show that she engaged

in a protected activity, U.S. Bank took adverse action against her, and there is a

connection between the protected activity and the adverse action.  *Macias Soto v. Core-*

*Mark Int'l*, 521 F.3d 837, 841 (8th Cir. 2008).  "A reprisal includes, but is not limited to,

any form of intimidation, retaliation, or harassment."  Minn. Stat. § 363A.15.

In the alternative, Muor seeks to invoke the doctrine of constructive discharge.

The doctrine permits a plaintiff to demonstrate the defendant took an adverse

employment action even when the plaintiff resigned from her position.  *Coursolle v.*

*EMC Ins. Grp.*, 794 N.W.2d 652, 660 (Minn. Ct. App. 2011).

### 1.      Adverse Employment Action

As discussed in Part II.A.1, *supra*, the Court found that Muor failed to

demonstrate an adverse action in connection with her discrimination claim.  To support

---

[17] Muor could also make a claim of reprisal by presenting direct evidence; however, Muor does not put forward any direct evidence in her brief and only briefs the *McDonnell Douglas* framework.

her reprisal claim, Muor asserts additional acts by U.S. Bank that she believes constitute an adverse action: failing to assign Muor to a different manager upon her request; failing to investigate her complaint that Czantskowski was discriminating against her; telling Muor not to discuss her discrimination complaint at work; selecting a date for her return to work before Muor was approved to return by her doctor; failing to interview Muor for a position in the mortgage department; and offering Muor a position with a supervisor, Hudoba, that U.S. Bank knew had harassed Muor in the past.

First, the record does not support Muor's assertion that U.S. Bank failed to investigate her complaint against Czantskowski.  Bach, a human resources employee, was contacted by Engen and Muor.  Muor did not file a formal complaint or a rebuttal to her 2007 review that would have initiated a further response from human resources.  Nor does the record support Muor's assertion that U.S. Bank knew Hudoba harassed Muor in the past.  Muor had never reported harassment, nor is there any evidence suggesting she told U.S. Bank of the harassment when explaining why she was not accepting the position under Hudoba.

Second, an "employee suffers a materially adverse employment action in the context of a MHRA retaliation claim when the employer engages in conduct that would dissuade a reasonable employee from making a discrimination claim." *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 751 (8th Cir. 2011).  The adverse employment action "must include some tangible change in duties or working conditions.  There must be some material employment disadvantage; minor changes in working conditions are insufficient." *Bahr v. Capella Univ.*, 788 N.W.2d 76, 83 (Minn. 2010) (internal citations omitted).  Muor

does not explain how U.S. Bank's failure to assign her to a different manager nor its request that she was not to discuss her discrimination complaint[18] is "a change, let alone a material change" to her "hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment." *Id.* at 82, 84. Nor has Muor explained how either action would dissuade a reasonable employee from reporting discrimination. *See Quinn*, 653 F.3d at 751.

Finally, taking the facts in the light most favorable to Muor, U.S. Bank did inform Muor that her position would be filled if she did not return to work before she received physician approval to return. However, Muor has not established that this act constituted discrimination because U.S. Bank offered Muor two positions when she was ready to return to work. Muor has not demonstrated that these positions would have resulted in a material change to her employment. Nor has Muor demonstrated that she was qualified for the mortgage position for which she applied or that it was more consistent with her previous position than the jobs offered to her by U.S. Bank. The Court concludes that Muor failed to demonstrate an adverse employment action and therefore has failed to establish her *prima facie* case of reprisal.

### 2.   Constructive Discharge

To prove constructive discharge, Muor must show (1) a reasonable person in her situation would find the working conditions intolerable, and (2) the employer intended to

---

[18] Muor indicated in her deposition that at some point Bach asked her to keep the facts of her discrimination complaint confidential. (*See* Muor Dep. at 170:7-19.) There is no indication that she was discouraged from discussing her complaint to human resources.

force her to quit.  *Id.* at 752.  Muor has presented no evidence about a reasonable person in her working conditions.  Further, Muor has presented no facts that suggest U.S. Bank intended to force Muor to quit or that her resignation was a foreseeable consequence of the alternative employment positions they offered her.  Consequently, the Court finds that Muor has failed to provide the facts necessary to support a finding of constructive discharge.

The Court concludes that Muor has failed to meet her burden with respect to her retaliation claim.  Accordingly, the Court will grant U.S. Bank's summary judgment motion.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that U.S. Bank National Association's Motion for Summary Judgment [Docket No. 12] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  June 27, 2012                        _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                        JOHN R. TUNHEIM
                                                  United States District Judge